UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Yellow Brick Road, LLC,

       Plaintiff,        Court File No. 13-cv-2266 (JRT/LIB)

   v.            **REPORT AND RECOMMENDATION**

Koster, et al.,

       Defendants.

---

   This matter came before the undersigned United States Magistrate Judge upon Defendant Greg Botolino's Motion to Dismiss, [Docket No. 12]; Defendants Larry Busch and Busch Law Center, LLC's Motion to Dismiss, [Docket No. 25]; Defendant Richard Hall's Motion to Dismiss, [Docket No. 40]; and Defendant John Childs's Motion to Dismiss, [Docket No. 85]. The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, has referred the present motions to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (Orders of Reference [Docket Nos. 43, 92]). The Court held two hearings on the present motions; the Court heard oral argument for Defendants Botolino's and Hall's respective motions on June 5, 2014, and the Court heard oral argument for the Busch Defendants' and Defendant Childs's respective motions on July 3, 2014. For the following reasons, the Court recommends **GRANTING** Defendant Greg Botolino's Motion to Dismiss, [Docket No. 12]; **GRANTING** Defendants Larry Busch and Busch Law Center, LLC's Motion to Dismiss, [Docket No. 25]; **GRANTING** Defendant Richard Hall's Motion to Dismiss, [Docket No. 40]; and **GRANTING** Defendant John Childs's Motion to Dismiss, [Docket No. 85].

## I.       BACKGROUND

The present case involves allegations of investment fraud and conspiracy. Plaintiff Yellow Brick Road, LLC ("Plaintiff") alleges that numerous Defendants, in various capacities and positions, acted and/or conspired to defraud Plaintiff out of $300,000. Plaintiff alleges one count of common law fraud – fraud in the inducement against Defendants John Childs, Scott A. Koster, Alicorn Capital Management, LLC, Richard Hall, Christine Wong-Sang, and Berea, Inc.; one count of civil conspiracy to commit fraud against all Defendants; one count of aiding and abetting fraud against Defendants Success Bullion USA, LLC, Greg Botolino, Larry Busch, and Busch Law Center, LLC; one count of civil theft in violation of Minn. Stat. § 604.14 against all Defendants; and one count of conversion against all Defendants. (Compl. [Docket No. 1], Counts I-V).[1]

Plaintiff alleges[2] that in or about early March 2010, Plaintiff became aware of a purported investment opportunity, as presented by Defendant Alicorn Capital Management, LLC in conjunction with Defendant Berea, Inc. (Id. ¶¶ 23, 25). Defendant Botolino allegedly pitched the investment to Plaintiff. (Id. ¶ 23). The investment pitch consisted of an opportunity to lease a "standby letter of credit" or "SBLC" in exchange for one payment of $300,000. (Id. ¶ 24). Renting the SBLC would allegedly return 15% per placed trade on the $10 million principle amount of the SBLC. (Id.) Defendant Hall of Berea, Inc. brokered Plaintiff's lease for Defendant Berea, Inc., to use as collateral for commodities investments. (Id. ¶ 25).

---

[1] On October 21, 2013, the Court accepted the parties' stipulation of dismissal of Defendant Centerlink, LLC, [Docket No. 21]; on December 26, 2013, Plaintiff voluntarily dismissed Defendants Louis and Touissant, [Docket Nos. 64, 65, 75]; on February 7, 2014, Plaintiff voluntarily dismissed Defendant Success Bullion USA, LLC, [Docket No. 106]; and on May 2, 2014, Plaintiff obtained default judgment against Defendants Koster, [Docket No. 167], and Wong-Sang, [Docket No. 168].

[2] The factual background here, and following, presents the Plaintiff's factual allegations as they pertain to all Defendants generally. The specific background and facts per each of the moving Defendants will be more precisely addressed in sections III-VI, infra.

Numerous discussions concerning the proposed transaction took place between March and May 2010 between Plaintiff and Defendants Koster (alleged principal and agent of Alicorn), Childs, and Hall. (Id. ¶¶ 27, 28-30). Defendants Koster, Childs, and Hall represented that Defendant Alicorn would obtain the SBLC from Defendant Success Bullion USA, LLC, that Alicorn would be entitled to a finder's fee, and that the remainder of Plaintiff's $300,000 would go to Success Bullion. (Id. ¶ 27). "Under the terms of the proposed transaction, Plaintiff was to deliver $300,000 to an escrow account to be administered by Defendants Larry Busch and the Busch Law Center, LLC and to be released upon the actual delivery of Success Bullion USA, LLC's SBLC by Centerlink, LLC to the financial institution with which Berea, Inc. would be working." (Id. ¶ 31). At no point in any of these discussions was Plaintiff informed that Alicorn would be unable to obtain an operative SBLC. (Id. ¶ 37).

On May 24, 2010, representatives for Plaintiff and Berea, Inc. executed an asset management agreement, which purported to set forth the terms by which Berea, Inc. would manage the $10 million asset represented by the SBLC that Alicorn would allegedly obtain for Plaintiff. (Id. ¶¶ 39, 40). The agreement provided that Berea, Inc. would "identify and manage the entry of the [SBLC] into an investment opportunity" and would make minimum payments of 15% of the face value of the SBLC on a monthly basis for twelve (12) months. (Id. ¶ 39). Two days later, Plaintiff wired $300,000 to the escrow account controlled by the Busch Defendants. (Id. ¶ 44).

After continued discussions and contractual negotiations, on June 10, 2010, Defendant Childs allegedly falsely represented that an electronic copy of the SBLC had been delivered and asked Defendant Hall to execute a notice of approval of the transaction to allow Defendant Busch to release the remaining $250,000 in escrow to Alicorn. (Id. ¶ 49). However, no real or

operative SBLC was ever delivered. (Id. ¶ 51). A flurry of emails was sent between the parties during the month of June concerning the "delivery" or lack thereof of the SBLC. (Id. ¶¶ 54-58). However, the assurances provided in these emails were false, as no "real" SBLC was ever delivered. (Id. ¶ 59).

Finally, on February 3, 2011, Defendant Hall informed Plaintiff by email that Defendant Berea, Inc. had not been able to secure the SBLC, allegedly because of an error in the transmission between Defendant Success Bullion USA, LLC and the financial institution. (Id. ¶ 60).

Several Defendants have now moved for dismissal for lack of personal jurisdiction, including Defendant Botolino, [Docket No. 12], Defendants Busch and Busch Law Center, LLC, [Docket No. 25], Defendant Hall, [Docket No. 40], and Defendant Childs, [Docket No. 85]. On February 25, 2014, the Court granted Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery with respect to Defendants Larry Busch and Busch Law Center, LLC. (Order [Docket No. 121]). Three days later, on February 28, 2014, the Court granted Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery with respect to Defendant John Childs. (Order [Docket No. 122]). In so granting leave to conduct this jurisdictional discovery, the Court allowed the affected parties – namely, Plaintiff, the Busch Defendants, and Defendant Childs – the opportunity to submit additional briefing with respect to Defendants Larry Busch and Busch Law Center, LLC's Motion to Dismiss, [Docket No. 25], and Defendant John Childs's Motion to Dismiss, [Docket No. 85], to account for the results of the jurisdictional discovery period.

## II.    STANDARD OF REVIEW

The present motions to dismiss before the Court variously challenge Plaintiff's

Complaint for lack of personal jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively.

Defendant Botolino, pro se, moves the Court for an order dismissing all claims against him in the present case because (1) the Court does not have personal jurisdiction over Defendant Botolino, and/or (2) Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendant Botolino. (Botolino Mem. [Docket No. 81], at 1). Defendants Larry Busch and Busch Law Center, LLC move the Court for an order dismissing Plaintiff's Complaint as alleged against the Busch Defendants for (1) lack of personal jurisdiction, and (2) failure to state a claim upon which relief may be granted. (Busch Motion to Dismiss [Docket No. 25]). Defendant Hall, pro se, moves the Court for an order dismissing all claims against him in the present case because (1) the Court does not have personal jurisdiction over Defendant Hall, and/or (2) Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendant Hall. (Hall Mem. [Docket No. 40], at 1). Finally, Defendant Childs moves the Court for an order dismissing Plaintiff's Complaint as alleged against Defendant Childs for lack of personal jurisdiction. (Childs Motion to Dismiss [Docket No. 85]).

### A.      Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citing Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.3d 369, 373 (8th Cir. 1990); Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)). As long as there is "some evidence upon which a prima facie showing of jurisdiction may be found to exist," the Rule

12(b)(2) motion will be denied. Pope v. Elabo GmbH, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (internal citations omitted). The party seeking to establish personal jurisdiction bears the burden of proof, and the burden does not shift to the party challenging personal jurisdiction. Epps, 327 F.3d at 647. For the purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party. Westley v. Mann, 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

The Epps court (Eighth Circuit) summarizes the evolution of personal jurisdiction doctrine:

> In International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court expanded the limits of state jurisdiction over nonresident defendants, while leaving in place basic due process limitations on that power. The Court focused not on the presence of the defendant in the state, as it had fifty years earlier in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), but rather on the nature of the contacts that the nonresident defendant had with the forum state. The Court stated that attention must be paid to the "quality and nature" of the contacts, as well as to whether the defendant, through those contacts, enjoyed the "benefits and protections" of the laws of the foreign state. International Shoe, 326 U.S. at 319, 66 S. Ct. 154. The Court further noted that situations exist in which a nonresident defendant's contacts with a forum state may be so substantial and continuous as to justify jurisdiction over that defendant even though the cause of action is "entirely distinct from those activities." Id. at 318, 66 S. Ct. 154. The Court's touchstone inquiries ask whether personal jurisdiction over the nonresident defendant is based on "minimum contacts" and whether assumption of personal jurisdiction would offend "traditional notions of fair play and substantial justice." Id. at 316, 66 S. Ct. 154.
>
> Since International Shoe, the Court has revisited and refined the analysis of personal-jurisdiction issues. A nonresident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S. Ct. 559. The Court has also identified two types of personal jurisdiction: general and specific. When a cause of action arises out

6

of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984); Burlington Industries, Inc. v. Maples Industries, Inc., 97 F.3d 1100, 1103 (8th Cir. 1996) (citing Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1432 n.4 (8th Cir. 1995)). However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. Helicopteros Nacionales, 466 U.S. at 415 n.9, 104 S. Ct. 1868. When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic. Id. at 414, 104 S. Ct. 1868.

Epps, 327 F.3d at 648.

A federal court in Minnesota sitting in diversity may exercise personal jurisdiction over a defendant if doing so (1) is consistent with the Minnesota state long-arm statute, Minn. Stat. § 543.19,[3] and (2) comports with Due Process. Pope, 588 F. Supp. 2d at 1014. Because Minn. Stat. § 543.19 reaches only as far as constitutional Due Process allows (coterminous), the Court here need only consider whether exercising personal jurisdiction over the moving Defendants is consistent with Due Process. Id. at 1015.

The exercise of personal jurisdiction over a defendant is constitutional (i.e. consistent with Due Process) if (1) the defendant has made minimum contacts with the forum state (2) such

---

[3] Minn. Stat. § 543.19 provides:

**Subdivision 1. Personal jurisdiction.** As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

    (1)  owns, uses, or possesses any real or personal property situated in this state; or

    (2)  transacts any business within the state; or

    (3)  commits any act in Minnesota causing injury or property damage; or

    (4)  commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

        (i)  Minnesota has no substantial interest in providing a forum; or

        (ii)  the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

that jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. These are two separate requirements. In Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the United States Supreme Court explained, "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Id. at 476. The Court thus engages in a two-part analysis:

> First, the court must determine whether the defendant has minimum contacts with the forum state. If it does not, the analysis is at an end; the court cannot exercise jurisdiction. If it does, the court moves to the second step of the analysis: determining whether the exercise of jurisdiction over the defendant would "comport with fair play and substantial justice." Burger King, 471 U.S. at 476, 105 S. Ct. 2174 (quotations omitted). The first step might be referred to as the "minimum contacts" analysis, while the second step might be referred to as the "reasonableness" analysis.

Pope, 588 F. Supp. 2d at 1015.

Minimum contacts are evaluated according to the defendant's conduct. "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King, 471 U.S. at 474. It follows that sufficient minimum contacts exist only when the defendant's conduct was such that he should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

A defendant may reasonably anticipate being haled into court when there is "some act by which the defendant purposefully avails itself of the privilege of conduct activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475. "A defendant whose contacts with a state are entirely random, fortuitous, or attenuated by

definition has not purposefully availed itself of the benefits and protections of the state's laws." Pope, 588 F. Supp. 2d at 1016.

The Eighth Circuit frequently lists five factors to consider in a personal jurisdiction analysis. "To evaluate the propriety of jurisdiction, we consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995) (internal quotations omitted). This District has held that the first two factors go primarily to whether minimum contacts exist, and the last two assist courts in assessing reasonableness. Pope, 588 F. Supp. 2d at 1017-18.

Additionally, in some jurisdictions, because the acts of conspirators in furtherance of a conspiracy are attributable to co-conspirators, courts have sought to assert personal jurisdiction over those for whom jurisdiction would otherwise be absent. Remmes v. Int'l Flavors & Fragrances, Inc., a New York corporation, 389 F. Supp. 2d 1080, 1094 (N.D. Iowa 2005). Minnesota has recognized such conspiracy-based personal jurisdiction. Hunt v. Nevada State Bank, 172 N.W.2d 292 (1969). Conspiracy-based personal jurisdiction requires a showing that (1) a conspiracy existed, (2) the non-resident defendant participated in or joined the conspiracy, and (3) an overt act was taken in furtherance of the conspiracy within the forum's borders. Peterson v. Wallace, 622 F. Supp. 2d 791, 801 (D. Minn. 2008) (citing Remmes, 389 F. Supp. 2d at 1093-1096).

**B.     Failure to State a Claim Upon Which Relief May Be Granted – Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint articulate only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In

addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

Courts must undertake the "context-specific task" of determining whether the moving party's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See id. at 679-81. The moving party must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street

Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).


### III.    DEFENDANT BOTOLINO'S MOTION TO DISMISS, [DOCKET NO. 12]

Although Defendant Botolino moves the Court for an order dismissing Plaintiff's Complaint as alleged against him for both lack of personal jurisdiction and failure to state a claim upon which relief may be granted, the Court is obligated to first, as a threshold matter, determine whether it may exercise jurisdiction over Defendant Botolino. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

Regarding the Court's personal jurisdiction over Defendants in the present action, Plaintiff's Complaint only generally alleges, "[t]he Court has jurisdiction over the Defendants because they have purposefully availed themselves of the laws of Minnesota by pursuing business opportunities and transacting business within the state of Minnesota and the Defendants participated in and agreed to join in a conspiracy, in furtherance of which overt acts were taken within the state of Minnesota." (Compl. [Docket No. 1], ¶ 21). Additionally, the Complaint generally alleges, "[v]enue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because Defendants have significant contacts with this district by doing business within this district and taking overt acts in furtherance of the conspiracy within this district." (Id. ¶ 22). However, Plaintiff's jurisdictional proffers at paragraphs 21 and 22 are

mere legal conclusions and, accordingly, are insufficient alone to establish a prima facie case for the Court's personal jurisdiction over Defendant Botolino (or any other moving Defendant in this matter). The Court must look to more specific submissions as contained in the present record on the pending motions.

The present record before the Court is entirely devoid of any indication that Defendant Botolino has ever physically been to Minnesota, owns any property in Minnesota, has a bank account or other money in Minnesota, or has ever solicited or done business in Minnesota. Accordingly, if the Court has personal jurisdiction over Defendant Botolino, it must be on the basis of specific, rather than general, jurisdiction. See Peterson, 622 F. Supp. 2d at 797. "The Court, therefore, must determine whether [Defendant Botolino] purposely directed his activities at residents of Minnesota and whether the present litigation results from alleged injuries that arise out of or relate to those activities." Id.

As articulated in the Standard of Review section above, a prima facie case of specific personal jurisdiction requires a showing that (1) defendant has had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction is in accordance with the notions of fair play and substantial justice. A foreign defendant has not made "minimum contacts" with the forum unless he has "purposefully availed himself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Bell Paper Box, 53 F.3d at 922. Even viewing the present record before the Court in the light most favorable to Plaintiff, Plaintiff nevertheless fails to allege particular facts sufficient to demonstrate Defendant Botolino's minimum contacts with and purposeful availment of the laws of Minnesota.

Nothing in Plaintiff's Complaint or the present record on the motions before the Court indicates how or whether Defendant Botolino purposefully availed himself of the laws of

Minnesota in such a way so as to have been on-notice of the possibility of being haled into court in this District. Plaintiff merely generically identifies Botolino – a resident of Georgia – as a co-conspirator and the individual who first pitched the underlying "investment opportunity" to Plaintiff. (Compl. [Docket No. 1], ¶ 12). However, nothing in the present record indicates that any action by Defendant Botolino took place in or was aimed at Minnesota or a Minnesota resident. Plaintiff fails to allege or offer any specific contacts by Defendant Botolino with Minnesota.

Although Defendant Botolino has not made sufficient minimum contacts with or executed acts directed at the present forum that would allow the Court to exercise specific personal jurisdiction over him, Plaintiff argues that the Court may nonetheless exercise conspiracy-based jurisdiction over all members of the alleged underlying conspiracy, including Defendant Botolino. As discussed above, Minnesota has recognized conspiracy-based personal jurisdiction. Hunt, 172 N.W.2d 292. Conspiracy-based personal jurisdiction requires a showing that (1) a conspiracy existed, (2) the non-resident defendant participated in or joined the conspiracy, and (3) an overt act was taken in furtherance of the conspiracy within the forum's borders. Peterson, 622 F. Supp. 2d at 801 (citing Remmes, 389 F. Supp. 2d at 1093-1096). In Peterson, the Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, held that because the conspiracy did not involve an overt act taken in Minnesota in furtherance of the conspiracy, the court could not exercise conspiracy-based jurisdiction.

Setting aside the first two elements of conspiracy-based jurisdiction for the time being, the Court focuses its present analysis on the requisite "overt act" element necessary to exercise conspiracy-based jurisdiction in the present case. Plaintiff primarily cites the purported release by the Busch Defendants of Plaintiff's escrowed funds from Arizona to Alicorn in Minnesota

upon receipt of the "fraudulent notice of approval for the SBLC," and the fact that Plaintiff entered into an engagement agreement with a Minnesota entity (Alicorn) as "overt acts" in furtherance of the conspiracy occurring within the forum's borders. (Pl.'s Resp. Mem. [Docket No. 94], at 11). However, no <u>facts</u> in the present record before the Court confirm that any acts related to or regarding the underlying conspiracy physically took place in Minnesota.

The closest Plaintiff comes to offering evidence of an "overt act" taken in furtherance of the underlying conspiracy within the borders of Minnesota is its allegation[4] that the escrowed funds were released from Arizona to co-conspirators located in Minnesota. The transfer of Plaintiff's escrowed funds from Arizona to Minnesota does not constitute an overt act in Minnesota for two reasons. First, the act itself of <u>transferring the money</u> took place in Arizona, not "within the borders of the forum state." As a result, it cannot constitute an overt act taken in furtherance of the conspiracy within Minnesota. Second, even if the transfer of funds can be said to have taken place within the borders of Minnesota, the transfer was not made <u>in furtherance</u> of the conspiracy but <u>after its completion</u>. "An overt act must be one in pursuance of the conspiracy and one in furtherance of it; and whether a certain act was in pursuance of it might depend entirely upon what the conspiracy was." <u>Hyde v. United States</u>, 225 U.S. 347, 375 (1912) (internal quotations omitted). Plaintiff's injury and the objective of the conspiracy as alleged in Plaintiff's Complaint was to fraudulently strip Plaintiff of $300,000. Plaintiff, a Montana limited liability company with its principal place of business in Washington state, (Compl. [Docket No. 1], ¶ 6), wired the subject $300,000 from Washington state to Arizona. (Busch Aff. [Docket No.

---

[4] No facts in the record on the present motions indicate that the escrowed funds were indeed released to Minnesota or a Minnesota resident (these are mere allegations and assumptions by Plaintiff). However, in light of the fact that Defendant Busch invoked his Fifth Amendment right to remain silent when asked about the subject transfer of escrow funds, the Court will, for the sake of the present report and recommendation only, allow Plaintiff an adverse inference and presume, for the purposes of its analysis in this report and recommendation only, that the Busch Defendants released the escrowed funds from Arizona to Minnesota. (Brandt Aff. [Docket No. 179-2], Ex. J at 4, Ex. L at 4).

29], ¶¶ 6, 9). Plaintiff relinquished control of $300,000 to an alleged conspirator, Defendant Busch, entirely outside of Minnesota. Upon transferring funds to Defendant Busch in Arizona, the objective of the alleged conspiracy was complete, and the Busch Defendants' subsequent transfer of a portion of the escrowed funds from out of Arizona to Minnesota cannot constitute an act "in furtherance" of the conspiracy within this state.[5]

The present record before the Court is lacking evidence of an overt act taken in furtherance of the conspiracy within the forum's borders, and, accordingly, Plaintiff has failed to demonstrate a prima facie showing of conspiracy-based personal jurisdiction. The Court cannot exercise conspiracy-based jurisdiction over the alleged conspirators, including Defendant Botolino.[6]

---

[5] C.f., Hunt v. Nevada State Bank, 172 N.W.2d 292 (1969) (exercising conspiracy-based jurisdiction when the co-conspirators, three of whom were Minnesota residents, were alleged to have conspired to convert the assets of an insurance company whose policy holders were primarily Minnesota residents; the effect of the conspiracy was directed at and felt in Minnesota). "The [Hunt] court noted that Minnesota was the only state that had significant contacts with all of the defendants and that the defendants intentionally set in motion financial actions that injured Minnesotans." Peterson v. Wallace, 622 F. Supp. 2d 791, 800 (D. Minn. 2008) (citing Hunt, supra, at 312) (emphasis added). Additionally, in Hunt, the great majority of the defendants had been present for an important meeting in Minnesota. The factual circumstances of Hunt are materially distinguishable and distinct from the factual allegations in the present record.

See in accord., Peterson v. Wallace, 622 F. Supp. 2d 791, 801 (D. Minn. 2008) (declining to exercise conspiracy-based jurisdiction; "[t]his is not a case in which a non-resident defendant directed the activities of an agent within the forum, thereby causing harm within the state, but seeks to shield himself because his own activities were extra-territorial. In this case, neither Wallace nor Sunderman was physically located here, nor did either of them take an act in Minnesota in furtherance of the alleged conspiracy. Even Wallace, whose role in the conspiracy involved many more contacts with Peterson, only made telephone calls to Peterson in Minnesota from outside the state.").

[6] In addition to the fact that Plaintiff is ultimately unable to offer any evidence that any act involved in the underlying conspiracy – much less an overt act – physically took place within the borders of Minnesota, rendering conspiracy-based jurisdiction inapplicable, the Court also lacks "effects-test" jurisdiction over the conspiracy itself, as nothing in the present record before the Court indicates that the conspiracy or the effects thereof were directed at Minnesota.

> The Supreme Court announced the "effects test" for personal jurisdiction in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). . . . The Supreme Court concluded that personal jurisdiction over the two reporters existed in California because they had directed their intentional tortious actions toward California. . . .
>
> The key similarity [in "effects test" cases] is the allegation of an intentional tort related to activity, particularly commercial activity, in the forum state and where

Because Plaintiff has failed to demonstrate a prima facie case of the Court's ability to exercise personal jurisdiction over Defendant Botolino – either by specific jurisdiction or conspiracy-based jurisdiction – the Court recommends granting Defendant Botolino's Motion to Dismiss, [Docket No. 12], for lack of personal jurisdiction.[7]

## IV.   DEFENDANTS LARRY BUSCH AND BUSCH LAW CENTER, LLC'S MOTION TO DISMISS, [DOCKET NO. 25]

Again, although the Busch Defendants move for dismissal for both lack of personal jurisdiction and failure to state a claim upon which relief may be granted, the Court must first address the personal jurisdiction issue. See Section III, supra; Steel Co., 523 U.S. at 94.

The present record on the motion before the Court, as supplemented by the limited jurisdictional discovery the Court permitted Plaintiff to conduct with respect to the Busch Defendants, is also lacking any indication that the Busch Defendants have ever physically been to Minnesota, own property in Minnesota, have a bank account or other money in Minnesota, or have ever solicited or done business in Minnesota. Defendant Busch is a resident of Arizona. (Busch Aff. [Docket No. 29], ¶ 2). Busch Law Center, LLC is an Arizona limited liability company with its principal and only place of business located in Arizona. (Id. ¶ 3). Neither Defendant Busch nor anyone associated with the Busch Law Center, LLC has ever visited Minnesota, pursued business opportunities in Minnesota, or transacted business in Minnesota. (Id. ¶¶ 4, 5). The Busch Defendants' responses to Plaintiff's limited jurisdictional discovery

---

the brunt of the impact of the injury is also felt in the forum state. The facts of this case do not meet this standard.

Peterson, 622 F. Supp. 2d at 797-98. The present record before the Court indicates that Plaintiff's alleged conspiracy was directed at a non-forum victim, rendering effects-test jurisdiction inapplicable.

[7] Because the lack of personal jurisdiction precludes this Court from proceeding to consider issues of law involving the claims in this case, Steel Co., 523 U.S. at 94, the Court does not reach the 12(b)(6) motion of Defendant Botolino.

further confirm that the Busch Defendants have no general connection to the present forum, as they have not communicated with any Minnesota residents regarding escrow services; have not provided legal or escrow services to anyone in Minnesota; do not own property or bank accounts in Minnesota; are not licensed to practice in Minnesota; and have not and do not travel to Minnesota, among other factors. (Brandt Aff. [Docket No. 179-2], Exs. J, L). Accordingly, if the Court is able to exercise personal jurisdiction over the Busch Defendants, it may do so only  on the basis of specific, rather than general, jurisdiction. See Peterson, 622 F. Supp. 2d at 797.

As discussed above, the Court may exercise specific personal jurisdiction over a party upon a showing that (1) the defendant has had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction is in accordance with the notions of fair play and substantial justice. In addition to having had no physical contact with the forum state, the Busch Defendants have had no significant interactions with Minnesota that would constitute sufficient minimum contacts. The Busch Defendants never received funds in Minnesota; rather, as regards the present suit, the Busch Defendants received funds in Arizona as wired by Plaintiff from Washington state. (Busch Aff. [Docket No. 29], ¶¶ 6, 9). Likewise, the Busch Defendants received the notice of acceptance, signed by Plaintiff, at their Arizona office as transmitted from Washington state and forwarded to the Busch Defendants from California. (Id. ¶ 9, Ex. A). All of the Busch Defendants' conduct and actions regarding or relating to the underlying transaction as articulated in the present record took place outside of Minnesota. Additionally, the Busch Defendants have disclaimed any communications or contact related to the present suit in or from Minnesota. (Id. ¶ 10). Nothing in the present record before the Court indicates that the Busch Defendants have had any contact with Minnesota, much less sufficient minimum contacts such that they may have reasonably anticipated being haled into court here.

17

The only allegation potentially connecting the Busch Defendants with Minnesota is the alleged release of escrow funds from Arizona to a Minnesota entity (Alicorn), as discussed in the previous section. However, mere contact with a Minnesota resident or entity is insufficient to create sufficient minimum contacts. "To assess compliance with due process, with respect to jurisdiction in a particular case, the minimum contacts relied upon must be between the defendant and the forum state, not simply between the defendant and a resident of the forum state. Standing alone, previous dealings with a resident appellant, absent other contact with the forum state, cannot be used as the basis for establishing jurisdiction over a nonresident appellee." Aaron Ferer & Sons Co. v. Am. Compressed Steel Co., 564 F.2d 1206, 1211 (8th Cir. 1977); T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Ass'n of Salina, Kansas, 749 F.2d 523, 525 (8th Cir. 1984) (holding that the use of interstate mail, telephone, or wired money transfers, standing alone, was insufficient to satisfy the requirements of due process). See also Mirman v. Feiner, 900 F. Supp. 2d 305, 315 (E.D.N.Y. 2012) (holding no jurisdiction over a foreign escrow agent providing a forum resident with services from outside the forum and who "agreed to serve as an escrow agent for what typically would have been a simple, one-shot transaction").

Not only is the present record before the Court lacking any indication that the Busch Defendants' activities related to the underlying claims took place in or were directed at Minnesota the forum, but the record presents no evidence that the alleged scheme and/or alleged conspiracy itself was directed at Minnesota. As discussed in Section III, supra, the Court has no basis to exercise conspiracy-based jurisdiction over the members of the alleged conspiracy, as it does not have jurisdiction over the conspiracy itself.

Because Plaintiff has failed to demonstrate a prima facie case of the Court's ability to exercise personal jurisdiction over the Busch Defendants – either by specific jurisdiction or

conspiracy-based jurisdiction – the Court recommends granting Defendants Larry Busch and Busch Law Center, LLC's Motion to Dismiss, [Docket No. 25], for lack of personal jurisdiction.[8]

## V.    DEFENDANT HALL'S MOTION TO DISMISS, [DOCKET NO. 40]

Again, although Defendant Hall moves for dismissal for both lack of personal jurisdiction and failure to state a claim upon which relief may be granted, the Court must first address the personal jurisdiction issue. See Steel Co., 523 U.S. at 94.

As with Defendant Botolino and the Busch Defendants, the present record before the Court is devoid of any indication that Defendant Hall has ever physically been to Minnesota, owns property in Minnesota, has a bank account or other money in Minnesota, has solicited or done business in Minnesota, or has any other hallmarks for the exercise of general personal jurisdiction. Accordingly, if the Court has personal jurisdiction over Defendant Hall, it does on the basis of specific, rather than general, jurisdiction.

Again, nothing in Plaintiff's Complaint or the present record before the Court indicates how or whether Hall purposefully availed himself of the laws of Minnesota in such as way so as to have been on-notice of the possibility of being haled into court in this District. In its Complaint, Plaintiff, a Montana/Washington resident, claims that Defendant Hall, a Georgia resident, introduced Plaintiff to Defendant Koster, a Minnesota resident, and worked closely with Koster, Childs (a California resident), and Plaintiff to negotiate and carry-out the underlying transaction and alleged conspiracy. Plaintiff asserts that Defendant Hall communicated extensively with Defendant Koster and implicates him as a principal actor in the "[c]onspiracy and the conspiratorial objective of operating a fraudulent enterprise, including obtaining

---

[8] See footnote 7, supra.

$300,000 from Plaintiff by falsely representing that an operative SBLC was being provided for use as counterparty collateral in an investment opportunity providing guaranteed minimum monthly payments ("Conspiratorial Objective")." (Compl. [Docket No. 1], ¶ 19). Plaintiff alleges that between March and May 2010 Defendant Hall took part in "numerous telephone calls and e-mail exchanges" between Plaintiff and Defendant Hall. (Id. ¶ 27). Plaintiff alleges that Hall presented Plaintiff, via email, with an asset management agreement, (Id. ¶ 38), sent his signature on an exhibit to the Alicorn engagement letter agreeing on behalf of Berea, Inc. that the proposed format of the SBLC was acceptable to Berea, Inc., (Id. ¶ 43), and executed a "notice of approval" to allow the Busch Defendants to release Plaintiff's funds, (Id. ¶¶ 49, 50).

Despite these specific allegations concerning Defendant Hall's involvement in the underlying transaction, the Court cannot find that Defendant Hall has had sufficient minimum contacts with this Minnesota forum. In fact, from the present record, it appears that the alleged communications between Defendant Hall and Plaintiff were outside of Minnesota. Plaintiff's proffer only concerns some limited communications between Defendant Hall and forum resident Koster and his Minnesota company, Alicorn. However, as discussed above, an "[i]ndividual's contact with an out-of-state party cannot alone automatically establish sufficient minimum contacts in the other party's home forum to permit exercise of jurisdiction in that forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Generally, sending letters into or making telephone calls to a forum state is insufficient, by itself, to satisfy due process and confer jurisdiction. Id. at 798-99 (citing Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982)). Plaintiff has failed to allege facts sufficient to demonstrate a quantity and quality of contacts with Minnesota as a forum such that Defendant Hall may have reasonably

anticipated being haled into court here. Plaintiff has failed to make a prima facie showing of specific personal jurisdiction with regard to Defendant Hall.

Additionally, the Court cannot exercise conspiracy-based personal jurisdiction over Defendant Hall; for the reasons discussed in Section III, supra, Plaintiff fails to identify an overt act in furtherance of the conspiracy that took place in or was aimed at Minnesota. Plaintiff fails to sustain its burden of demonstrating a prima facie case for the Court's exercise of personal jurisdiction.

Because Plaintiff has failed to demonstrate a prima facie case of the Court's ability to exercise personal jurisdiction over Defendant Hall – either by specific jurisdiction or conspiracy-based jurisdiction – the Court recommends granting Defendant Hall's Motion to Dismiss, [Docket No. 40], for lack of personal jurisdiction.[9]

## VI.   DEFENDANT CHILDS'S MOTION TO DISMISS, [DOCKET NO. 85]

Defendant Childs moves the Court for an order dismissing Plaintiff's Complaint as alleged against Defendant Childs only for lack of personal jurisdiction, pursuant to Rule 12(b)(2). (Def. Childs's Motion to Dismiss [Docket No. 85]).

As with the preceding three motions, the present record before the Court is equally devoid of any indication that Defendant Childs has ever physically been to Minnesota, owns property in Minnesota, has a bank account or other money in Minnesota, or has solicited or done business in Minnesota. Defendant Childs is a resident of California. (Childs Decl. [Docket No. 88], ¶ 2). Childs states and affirms that he has never visited Minnesota, owned any property in Minnesota, maintained an office in Minnesota, done business in Minnesota, or otherwise maintained a presence in Minnesota. (Id. ¶ 3). Accordingly, and as mentioned in the above

---

[9] See footnote 7, supra.

sections, if the Court has personal jurisdiction over Defendant Childs, it does so on the basis of specific, rather than general, jurisdiction.

Plaintiff primarily relies on Childs's communications (by telephone and email) with Defendant Koster, the resident Minnesota-resident Defendant, to establish personal jurisdiction. Additionally, Plaintiff asserts that Childs engaged in overt acts in furtherance of the "Minnesota conspiracy," including falsely representing along with Defendant Koster that Alicorn could obtain a real SBLC from Success Bullion, assisting Defendant Koster in negotiating an underlying contract between Plaintiff and Alicorn, and falsely reporting that the purported SBLC was being delivered to induce Plaintiff to authorize the release of funds to Alicorn in Minnesota from the escrow account. (Pl.'s Resp. Mem. [Docket No. 100], at 10).

However, the vast majority of Plaintiff's arguments in support of the Court's jurisdiction over Defendant Childs are conclusory: "the Complaint plainly alleges Childs's contacts with Minnesota through his dealings with Scott Koster, a Minnesota resident, on behalf of Alicorn, a Minnesota company." (Id. at 11). Additionally, with minimal citation, Plaintiff argues that "Childs's conspiracy with Koster, Alicorn, and the other defendants is not the first and only time that Childs has worked with Koster and Alicorn." (Id. at 12).

Nothing in the present record before the Court, as supplemented by the limited jurisdictional discovery the Court allowed Plaintiff to conduct with respect to Defendant Childs, indicates how or whether Childs purposefully availed himself of the laws of Minnesota in such a way so as to have been on-notice of the possibility of being haled into court in this District. Nothing in the present record indicates that any action by Defendant Childs (other than some communication with Defendant Koster) took place in or was aimed at Minnesota. Plaintiff primarily relies on Childs's allegedly extensive contact with Koster, a Minnesota resident, and

Alicorn, a Minnesota company, throughout the alleged conspiracy. However, as articulated above, mere communications with a forum's resident(s) is insufficient to establish sufficient minimum contacts, and email/telephone/fax communications may only be used to <u>support</u> the exercise of personal jurisdiction – "they do not themselves establish jurisdiction." <u>Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.</u>, 89 F.3d 519, 523 (8th Cir. 1996). "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." <u>Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., Ltd.</u>, 872 F. Supp. 2d 838, 843 (D. Minn. 2012) (<u>quoting</u> <u>Mountaire Feeds, Inc.</u>, 677 F.2d at 655 (<u>quoting</u> <u>Aaron Ferer & Sons Co.</u>, 558 F.2d at 455 n. 6)).

Plaintiff also alleges Defendant Childs received payments related to the underlying claims from Defendant Alicorn. However, any such payments Defendant Childs received in connection with the present suit were wired to and received in California. (Childs Decl. [Docket No. 88], ¶ 5). Defendant Childs disclaims any employment connection to Alicorn, stating that he has never worked directly for Alicorn or Defendant Koster, never signed an employment agreement with Alicorn, never served as an agent of Alicorn, and never worked on behalf of Alicorn in any capacity. (<u>Id.</u> ¶ 7). Defendant Koster, the only Minnesota resident with alleged involvement in the underlying transaction, reached out to Defendant Childs in California and requested assistance with the underlying transaction with Plaintiff; Defendant Childs did not initiate any action directed toward Minnesota. (Brandt Aff. [Docket No. 179-1], Ex. A at 7). Defendant Childs maintains that he never reached out to Minnesota to engage in any aspect of the underlying transaction, and that he was not working on behalf of Defendant Koster or Alicorn. (<u>Id.</u> at 7-8). Defendant Childs's communications with Defendant Koster were limited to phone calls and emails. (<u>Id.</u> at 12). Plaintiff's Complaint heavily references Defendant Childs's

role in the underlying alleged transaction. However, despite his alleged role in the purported fraud, Plaintiff ultimately fails to submit to the Court anything other than mere legal conclusions in an effort to sufficiently establish Defendant Childs's minimum contacts with Minnesota, and thus, Plaintiff fails to demonstrate a prima facie case for the exercise of personal jurisdiction by this Court over Defendant Childs.

Additionally, the Court cannot exercise conspiracy-based personal jurisdiction over Defendant Childs, as discussed at length in Section III, supra; Plaintiff fails to identify an overt act in furtherance of the conspiracy that took place in or was aimed at Minnesota. Plaintiff fails to sustain its burden of demonstrating a prima facie case for the Court's exercise of personal jurisdiction.

Because Plaintiff has failed to demonstrate a prima facie case of the Court's ability to exercise personal jurisdiction over Defendant Childs – either by specific jurisdiction or conspiracy-based jurisdiction – the Court recommends granting Defendant Childs's Motion to Dismiss, [Docket No. 85], for lack of personal jurisdiction.

## VII.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1.   That Defendant Greg Botolino's Motion to Dismiss, [Docket No. 12], be **GRANTED**;

2.   That Defendants Larry Busch and Busch Law Center, LLC's Motion to Dismiss, [Docket No. 25], be **GRANTED**;

3.   That Defendant Richard Hall's Motion to Dismiss, [Docket No. 40]; be **GRANTED**;

4.   That Defendant John Childs's Motion to Dismiss, [Docket No. 85], be **GRANTED**; and

5.   That Plaintiff's Complaint as alleged against these Defendants be dismissed without prejudice.

Dated: July 21, 2014                                    s/Leo I. Brisbois
                                                        Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 4, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by August 18, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.